HUNSBERGER *v.* WYMAN.

[No. 30,964. Filed May 6, 1966.]

370

*Willard H. Chester, Jr.,* of Elkhart, and *Bruce C. Hammer-schmidt,* and *Hammerschmidt & Bonewitz,* of counsel, of South Bend, for appellant.

*Phillip E. Byron, Jr.,* of Elkhart, for appellee.

RAKESTRAW, J.—This case comes to us on petition to transfer from the Appellate Court under the Acts of 1901, ch. 247, § 10, p. 565, 1933, ch. 151, § 1, p. 800, being §§ 4-215, Burns' 1946 Repl. See *Hunsberger* v. *Wyman* (1965), 208 N. E. 2d 478 for the opinion of the Appellate Court.

The facts as shown by the evidence are extremely simple. Aside from two medical witnesses, the only person testifying was the appellant. For our purposes, we must accept as true all of his testimony.

This testimony reveals that the appellant and the appellee were neighboring farmers. In addition to farming, the appellant did custom harvesting, ditching, carpentry and welding; and also ran a dairy and sold and hauled fertilizer. In May, 1957, the appellee made arrangements for the appellant to cut a truck frame from an old milk truck chassis owned by the appellee and located on appellee's farm. The cutting was to be done with an acetylene torch owned and furnished by the appellant. Pursuant to these arrangements, the appellant and the appellee proceeded to cut the truck frame from the truck itself in the appellee's barn yard, which was muddy from a recent rain and the tramping of cattle. The appellant and appellee were alone while the cutting was being performed.

The appellee had his tractor and chain, and they moved the truck from side to side as the appellant proceeded to cut the top from the truck chassis with his acetylene torch. The appellee directed him to cut it so that the flat bed would remain on the chassis and a floor could be placed on it.

After the cutting was apparently completed, they attempted to pull the bed from the body with the chain and tractor, without success. The tractor was then backed up releasing the tension in the chain. The appellant thought he saw where it was still fastened and asked for a hammer and chisel, which were not readily available. He then saw an old ax, walked in front of the bed, and hit it with the ax. The truck bed fell over in the direction of the appellant. He was unable to get out of the way, and it fell on him causing his injuries.

The appellant's complaint alleged negligence as follows:

"3. That on said day while Plaintiff was carrying out his work and labor in removing and separating said milk truck body from its bed and frame, at the directions and order of the Defendant and was necessarily at and about

said truck body, bed and frame, which was turned on its side and was attempting to disconnect said bed and frame from said truck body *and without knowledge on the part of the Plaintiff of any danger or peril then existing to him,* the Defendant carelessly and negligently caused, allowed and permitted said truck bed and frame to be loosened and to fall down upon the Plaintiff while he was engaged as aforesaid."

The underlined section of the above paragraph was added by amendment "to make the pleadings conform to the evidence" at the close of the evidence. The appellee filed an answer raising the issue of assumption of risk. Of course the issue of possible contributory negligence can be raised without special pleading. 21 I. L. E., Negligence, § 154, p. 396. *Hancock Truck Lines* v. *Butcher* (1950), 229 Ind. 36, 94 N. E. 2d 537; *Union Traction Co. of Indiana* v. *Ringer* (1927), 199 Ind. 405, 155 N. E. 826.

At the conclusion of the plaintiff's evidence, the trial court directed a verdict for the defendant. The Appellate Court reversed the judgment of the trial court on the basis that the question of negligence is a question of fact for the jury as is the question of contributory negligence or assumption of risk.

The appellant now argues that there is evidence from which the jury could infer that Wyman did not furnish Hunsberger a safe place to work, i.e., a muddy field; that there is evidence from which the jury could conclude that Wyman did not furnish the proper tools, i.e., the only tool available to disconnect the body from the bed was an ax; that there is evidence from which a jury could decide that Wyman omitted to do an act which could have prevented the bed from falling on Hunsberger, i.e., by backing the tractor against the bed or by shoring it up. Therefore he maintains that the issue of negligence should be decided by the jury. But none of these acts or omissions were alleged in the complaint as negligence, nor were they included when the complaint was "amended to conform with the evidence."

Putting aside, however, the requirement that negligence

be both alleged and proved, we must still consider the basic nature of negligence, together with the possible defenses of contributory negligence and assumption of risk. According to the uncontradicted testimony in this record, the accident occurred in a very unexpected fashion. As to the condition of the field, and the basic construction of the truck, the knowledge of both parties was apparently equal. And while the appellant alleges that he was an employee, it is clear from his testimony that only general instructions were given as to the results desired. The actual cutting act and the use of an ax to free the truck bed were done at the appellant's initiative. The opportunities for knowledge were succintly set forth by the appellant in his testimony as follows:

"Q. So that each of you had the same opportunity to see the same thing?
"A. Yes.
"Q. An equal opportunity to both of you?
"A. Yes, there was."

In order for an act or an omission to constitute negligence, a person to be charged must have knowledge or notice that such act or omission involved danger to another.

"The foundation of liability is knowledge, or what is deemed in law to be the same thing, namely, the opportunity by the exercise of reasonable diligence to acquire knowledge of peril. . . ." 21 I. L. E. Negligence § 4, p. 266.

See also *Nisbet* v. *Van Tuyl* (1957), 241 F. 2d 874.

Where there is no knowledge, actual or constructive, of danger or peril on the part of a defendant, he cannot be charged with negligence. *Kennedy* v. *Southern Fire Brick and Clay Company, Inc.* (1927), 86 Ind. App. 629, 159 N. E. 1.

In addition, a plaintiff must have exercised reasonable care for his own safety.

"A person who knows and appreciates, or in the exercise of ordinary care should have known and appreciated, the existence of danger from which injury might reasonably be anticipated must exercise ordinary care to avoid injury, and a person who by his voluntary acts

or omissions exposes himself to danger of which he has actual or imputed knowledge may be guilty of contributory negligence." 21 I. L. E. Negligence, § 84, p. 340. *City of Evansville* v. *Blue* (1937), 212 Ind. 130, 8 N. E. 2d 224.

It has long been settled that an employee assumes the risks necessarily incident to his employment if the danger involved is open and obvious so that he has knowledge of it or in the exercise of reasonable care should have knowledge. *Swanson* v. *The City of Lafayette* (1893), 134 Ind. 625, 33 N. E. 1033; *The Louisville and Nashville R. R. Co.* v. *Kemper* (1896), 147 Ind. 561, 47 N. E. 214; *Shaver* v. *Home Telephone Co.* (1905), 36 Ind. App. 233, 75 N. E. 288; *Chicago, Indianapolis and Louisville R. R. Co.* v. *Sanders* (1908), 42 Ind. App. 585, 86 N. E. 430.

In any negligence action, both parties are obligated to exercise ordinary and reasonable care to avoid injury. This includes the duty to observe and appreciate danger or threatened danger. "A person is required to make reasonable use of his faculties and senses to discover dangers and conditions of danger to which he is or might become exposed, . . ." 21 I. L. E. Negligence § 85, p. 341. *Day* v. *Cleveland, C., C. & St. L. R. Co.* (1894), 137 Ind. 206, 36 N. E. 854; *Stewart* v. *Pennsylvania Co.*, (1892), 130 Ind. 242, 29 N. E. 916.

In this case we have two parties with the same knowledge and the same opportunity for knowledge. They each have the same duty to exercise reasonable care, which includes the duty to see and appreciate what can be seen and appreciated and to avoid danger. If the appellant as he testified, had no knowledge of any peril or danger, it seems impossible that the appellee could be charged with any knowledge of peril or danger to require some other action. Appellant has been unable to point out any action, omission, or condition which could be urged as negligence that was not also fully known to the appellant himself. Since the same standard must be imposed on both parties, it cannot be said that the duties upon appellee are greater than those upon the appellant.

In the case of *Chicago, Etc. R. Co.* v. *Sanders, supra,* the Appellate Court stated:

". . . There is nothing in the evidence justifying a finding of negligence on the part of the foreman and at the same time of freedom from negligence by the appellee. Their opportunities to determine the fact were at least equal. Appellee was entirely capable of forming an intelligent judgment, and of acting upon such judgment, so that the deduction that both were negligent or that neither was, is unavoidable. The finding is not, therefore, supported by the evidence."

We believe that this reasoning applies with equal force to the case at bar.

Since it thus appears from the undisputed evidence that either the appellee was not negligent or the appellant was contributorily negligent or assumed the risk, it was not error of the trial court to direct a verdict for the appellee.

Transfer from the Appellate Court is ordered and the judgment of the trial court is affirmed.

Myers, C. J., Arterburn and Jackson, JJ., concur. Achor, J., not participating.

NOTE.—Reported in 216 N. E. 2d 345.