STATE of Indiana, Appellant
(Plaintiff Below),

v.

H. Lewis McKINNEY and Michiana
Magnetics, Inc., Appellees
(Defendants Below).

No. 20A03–8604–CV–121.

Court of Appeals of Indiana,
Third District.

June 15, 1987.

Rehearing Denied July 20, 1987.

Linley E. Pearson, Atty. Gen., John Emry, Deputy Atty. Gen., Indianapolis, for appellant.

H. Lewis McKinney, pro se.

---

STATON, Judge.

H. Lewis McKinney and Michiana Magnetics, Inc. were each found guilty by the trial court of forty-five violations of the Indiana Deceptive Consumer Sales Act.[1] The court enjoined McKinney and Michiana Magnetics from engaging in further misrepresentations. The court also awarded costs and civil penalties of $20,000 to the State, and restitution totalling $10,050.93 to the consumer victims. However, the monetary awards were against Michiana Magnetics only, even though the court knew the corporation was defunct and apparently had no assets. The State appeals, raising the sole issue of whether the court erred in failing to hold McKinney personally liable for the monetary judgments.[2]

We reverse and remand.

In 1979, McKinney incorporated Michiana Magnetics,[3] and began to do business in Elkhart, Indiana. McKinney's business involved two lines of products: water conditioning equipment and necklaces. Both purported to rely on electromagnetic waves for their effectiveness. McKinney claimed that customers would "get cleaner, safer, and pure water" by using his water conditioning equipment, which he represented would "take out microbiological contaminants, suspended solids, inorganic solutes, and organic compounds that are sometimes and increasingly found in our water supplies." He also claimed his equipment would effect "total iron removal."

The court found that McKinney and Michiana Magnetics had made these representations even though they knew or reasonably should have known the representations were false. The court also found that McKinney represented he would honor warranties he had made when he knew or reasonably should have known he would not.

McKinney also used Michiana Magnetics to market magnetic necklaces which he represented as an effective treatment for arthritis and bursitis. The State's petition for injunction initially alleged that McKinney was practicing medicine without a license, but the State later dropped this count.

 In order for the court on appeal to set aside the trial court's findings or judgment, we must find them clearly erroneous. *Town & Country Mutual Insurance Co. v. Savage* (1981), Ind.App., 421 N.E.2d 704, 707. A judgment will be set aside as clearly erroneous when, although there is evidence to support the trial court's findings and decision, the record leaves the reviewing court with a definite and firm conviction that a mistake has been committed. *Moore v. Moriarty* (1981), Ind.App., 415 N.E.2d 779, 781.

Indiana courts are reluctant to disregard the corporate entity and do so only to protect innocent third parties from fraud or injustice when transacting business with a corporate entity. *Extra Energy Coal Co. v. Diamond Energy* (1984), Ind.App., 467 N.E.2d 439, 441–42; *Clarke Auto Co., Inc. v. Fyffe* (1954), 124 Ind.App. 222, 116 N.E.2d 532, 535. The rationale of this rule was summarized in *Clarke:*

'The doctrine that a corporation is a legal entity existing separate and apart from the persons composing it is a legal theory introduced for purposes of convenience and to subserve the ends of justice. *The concept cannot, therefore, be extended to a point beyond its reason and policy, and when invoked in support of an end subversive of this policy, will be disregarded by the courts.* Thus, in an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical, the corporate entity being disregard-

---

1. Indiana Code 24–5–0.5–1 *et seq.*

2. McKinney's and Michiana Magnetics's pro se Appellees' Brief is plagued with errors. Generously interpreted, it challenges the court's finding that appellees engaged in deceptive consumer sales practices. This finding is amply supported by the testimony of over twenty witness-

es. We find no error here, or on any other issue the appellees have attempted to raise.

3. The corporation's name originally was Haig, but was amended to Michiana Magnetics in 1981.

ed where used *as a cloak or cover for fraud or illegality.'*

116 N.E.2d at 535 (original emphasis) (quoting 13 Am.Jur. § 7, p. 160 (now found at 18 Am.Jur.2d *Corporations* § 43 (1985))).

In *Extra Energy* we concluded that, "[t]here being no evidence of fraud or misrepresentation, the fact that Extra Energy's decision to do business with Diamond Energy was ultimately a poor one does not raise these circumstances to the level of unfairness, fraud, or injustice necessary to hold General Petroleum and these individuals liable for the debts of Diamond Energy." We also noted that actual fraud might not be required to pierce the corporate veil: "[a]pplication of the concept of constructive fraud, as requested by the plaintiff-appellant, is unwarranted in light of the absence of misrepresentation or deception." *Extra Energy*, 467 N.E.2d at 442 n. 1.

█ The present case contains the elements missing in *Extra Energy:* deception, misrepresentation, and injustice. McKinney was found by the trial court to have deceived his customers by making numerous misrepresentations regarding his equipment's effectiveness and warranty. He would now use the corporation as a cloak to avoid the consequences of his deceptions, including the payment of restitution to the victims. To allow McKinney to retain the fruits of his illegal conduct is a result contrary to case law and to equity. However, this is precisely the result produced by the trial court's order. This contradiction leaves us with a definite and firm conviction that a mistake has been committed.

McKinney's personal liability is compelled by another reason as well: McKinney has treated Michiana Magnetics and himself as one and the same. We come to this conclusion for several reasons.

█ First, McKinney's day-to-day business activities reveal that he *was* Michiana Magnetics. He incorporated the business and was the corporation's sole employee. He hired the answering service and determined the content of mailings and advertisements. He decided which suppliers to

use. He decided to give a one hundred twenty day warranty, and he stamped the warranty on invoices. He made all the sales. He made all the service calls and handled all the complaints. There is no evidence that anyone else took any part in the business.

Secondly, McKinney regularly took money out of the corporation account for his personal use.

Thirdly, McKinney testified that the entire initial capitalization of the corporation came from items he transferred to it: "a typewriter, couple of desks, and a copy machine, files, storage cabinets, that's about it."

A leading commentator had this to say about piercing the corporate veil:

> Even absent illegitimate purposes, the courts have conditioned recognition of corporateness on compliance with two requirements:
>
> (a) Business must be conducted on a corporate and not a personal basis;
>
> (b) The enterprise must be established on an adequate financial basis.
>
> Sound policy considerations support these requirements. The shareholder who refuses to draw a line between his individual and corporate affairs is in a poor position to ask that the court effect what he has failed to do.

H. HENN, HANDBOOK OF THE LAW OF CORPORATIONS 256–57, § 147 (WEST 1970). McKinney has fulfilled neither of these requirements.

Finally, but not of least importance, McKinney has filed an appellee's brief not only on his own behalf but also on behalf of Michiana Magnetics. Indiana Code 34–1–60–1 requires that a corporation be represented by a licensed attorney in a civil action. Thus, either McKinney is practicing law without a license or he is merely representing himself under both his names: H. Lewis McKinney and Michiana Magnetics, Inc. For all these reasons, we conclude that McKinney has treated himself and the corporation as an interchangeable entity. This, together with his deceptive conduct and the injustice to his consumer victims,

compels us to hold that McKinney cannot be permitted to use Michiana Magnetics as a shield against personal liability.

We remand to the trial court for its entry of an order holding H. Lewis McKinney personally liable for costs, civil penalties of $20,000, and restitution to the victims of $10,050.93.

HOFFMAN and NEAL, JJ., concur.